UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHELA LEOCATA, through Matthew T. Gilbride, Esq., Conservator over her Estate and Next Friend,<br><br>    Plaintiff,<br><br>v.<br><br>PATRICIA WILSON-COKER, Commissioner, Connecticut Department of Social Services; and TOMMY G. THOMPSON, Secretary of the U.S. Department of Health and Human Services,<br><br>    Defendants. | Civ. No. 3:02CV1066 (CFD)<br><br><br><br><br><br><br><br><br><br><br><br>MAY 12, 2004 |

**MEMORANDUM IN SUPPORT OF FEDERAL DEFENDANT'S OPPOSITION
TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

<u>Statement of the Case</u>

Plaintiff has requested a preliminary injunction requiring the Commissioner of the Connecticut Department of Social Services and the Secretary of the U.S. Department of Health and Human Services ("the Secretary") to provide funding under the Medicaid program for the residential charges of Arden Courts, the assisted living facility ("ALF") in which plaintiff currently resides. In her Memorandum of Law in Support of Plaintiff's Motion for Temporary Injunction ("Pl's. Mem."), plaintiff alleges that she is currently using her own funds to pay for her stay at Arden Courts, but that she "expects to run out of money in the next few

months" (id. at 2).  Plaintiff alleges that, once her funds have been exhausted, she will be forced to enter a Medicaid-certified nursing facility ("NF"), even though a NF would be more expensive than an ALF (id. at 2-3).

As grounds for the injunction, plaintiff repeats her previous claims that Congress' decision to provide Medicaid funding for NF room-and-board charges, but not for ALF residential charges, violates the Equal Protection and Due Process clauses of the United States Constitution.  In addition, plaintiff asserts a new claim that is not alleged in her complaint.  Plaintiff alleges that defendants' failure to pay for her stay at Arden Courts violates the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131 et seq.

As this memorandum will demonstrate, plaintiff has not satisfied the requirements for the issuance of a preliminary injunction.  Most importantly, as the Secretary demonstrated in his Memorandum in Support of Federal Defendant's Motion to Dismiss ("Fed. Def's. Mem."),[1] plaintiff has absolutely no chance of prevailing on her Equal Protection and Due Process claims.  Moreover, while plaintiff attempts to overcome the weaknesses of her case by asserting a new claim under the ADA,

---

[1] The Secretary has moved to dismiss this case for lack of standing and for failure to state a claim upon which relief can be granted.  The Court held argument on the Secretary's motion on September 19, 2003, but has not yet issued a decision.

she fails to recognize that the Federal government cannot be sued for discrimination under the ADA.  See 42 U.S.C. § 12131(1) (defining a "public entity" under the ADA as "any State or local government ..."). Accordingly, plaintiff's motion for injunctive relief should be denied.

### The Medicaid Program

The Medicaid program, established in 1965 as Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 et seq., provides Federal funding to States that choose to pay the costs of medical care for certain needy individuals and families.[2]  Although participation in Medicaid is voluntary, once a State elects to participate, it must comply with all requirements of Title XIX. To qualify for Federal funding under Medicaid, a State must submit to the Secretary a "plan for medical assistance" that describes the nature and scope of the State's program.  42 U.S.C. § 1396a(a).  If the Secretary approves the plan, the State will receive Federal funding for a portion of the payments made under its plan.  42 U.S.C. § 1396b.

---

[2]  To participate in Medicaid, the States are required to provide coverage to the "categorically needy", which includes individuals who receive income maintenance payments under the Federal Supplemental Security Income ("SSI") program (except that, in certain situations, States may apply more restrictive eligibility criteria than SSI).  42 C.F.R. 435.120 and 435.121.  SSI payments are made to aged, blind, and disabled individuals whose income is below the Federal payment standard.  See 42 U.S.C. 1381 et seq. States may supplement the Federal SSI payment with their own funds.  42 U.S.C. 1382e.

The Medicaid statute defines "medical assistance" to include a variety of medical, health, and supportive services. 42 U.S.C. § 1396d(a).[3/] The term includes three basic types of inpatient care. Specifically, the statute provides coverage for inpatient services, including room and board, provided by hospitals, NFs, and intermediate care facilities for the mentally retarded ("ICF/MRs"). See 42 U.S.C. § 1396d(a)(1),(4),(14),(15), and (16). The statute also establishes certification standards or participation requirements for such facilities. See 42 U.S.C. §§ 1396d(c),(d),(h) and 1396r. See also 42 C.F.R. §§ 440.10(a)(3)(iii), 440.150(a)(3), 441.151(b), and 483, Subparts B and I.

Of particular relevance to the present case, the statute defines a NF as an institution: (1) which is primarily engaged in providing -

> (A) skilled nursing care and related services for residents who require medical or nursing care,
> (B) rehabilitation services for the rehabilitation of injured, disabled, or sick persons, or
> (C) on a regular basis, health-related care and services to individuals who because of their mental or physical condition require care and services (above the level of room and board) which can be made available to them only through institutional facilities ...;

(2) which has in effect a transfer agreement with one or more

---

[3/] A State is required to cover some of these services (e.g., hospital and NF care) for certain specified groups, while other services (e.g., clinic services, physical therapy services) may be provided at the State's option. 42 C.F.R. §§ 440.210-440.225.

Medicare-certified hospitals; and (3) which complies with Federal standards pertaining to the provision of services, residents' rights, sanitation and physical environment, and other matters. 42 U.S.C. § 1396r(a).

To participate in Medicaid, a NF must be periodically "certified", based on the findings of on-site "surveys", as meeting the applicable health and safety requirements. 42 U.S.C. § 1396r(a)(3). See also 42 C.F.R. § 483.1 et seq. (establishing standards for skilled nursing facilities under Medicare and NFs under Medicaid). A NF must enter into a provider agreement with the State and the Secretary (if the facility also participates in Medicare). 42 U.S.C. § 1395cc(a); 42 U.S.C. § 1396a(a)(27). If it is determined, through later surveys, that a NF no longer meets program requirements, various sanctions may be imposed, including termination of the facility's provider agreement. 42 U.S.C. § 1396r(h).

In contrast to the foregoing provisions, the Medicaid statute makes no explicit reference to ALFs. Hence, the statute neither provides coverage for the residential or room-and-board charges of an ALF, nor establishes any certification requirements for such facilities. See State of Texas v. Department of Health and Human Services, 61 F.3d 438, 442 (5th Cir. 1995) (the Medicaid statutory scheme "reveals an intent to use limited Medicaid dollars to pay for room and board expenses only in those

facilities for which Congress has extracted the quid pro quo of federal quality assurance standards" - that is, only in hospitals, NFs, and ICF/MRs).

The term "medical assistance", however, includes a variety of health or supportive services that can be provided under a State plan to individuals who reside in their homes or in community settings other than a hospital, NF, or ICF/MR, such as an ALF.  These services include various home health services (e.g., skilled nursing and home health aide care) and "personal care services".  42 U.S.C. § 1396d(a)(7) and (24); 42 C.F.R. §§ 440.70 and 440.167.  Under the personal care benefit, a State may provide a wide range of human assistance (e.g., assistance with eating and dressing, housework, grocery shopping, laundry, meal preparation, and medication management) to individuals who reside in ALFs or other community settings.

Moreover, in addition to the foregoing State-plan services, the Secretary may grant a waiver authorizing a State to furnish certain "home or community-based" ("HCB") services (e.g., homemaker, personal care, and case management services) that would otherwise not qualify as medical assistance under the program, or that would be provided in a manner that would otherwise violate certain Medicaid statutory requirements, but only if such services are furnished to individuals who, but for the provision of such services, would require the level of care

provided in a hospital, NF, or ICF/MR.  42 U.S.C. § 1396n(c); 42 C.F.R. §§ 440.180 and 441.300 et seq.  See generally Skandalis v. Rowe, 14 F.3d 173, 176 (2d Cir. 1994).  HCB services enable elderly, disabled, or chronically-ill persons, who would otherwise be institutionalized, to live in the community.  Significantly, however, the statute precludes a State from including "room and board" as an HCB service.  See 42 U.S.C. § 1396n(c)(1).  See also 42 U.S.C. §§ 1396t(a)(9) and 1396u(f)(1)(excluding "room and board" from "home and community care" and "community supported living arrangements services").

## ARGUMENT

I.   PLAINTIFF HAS FAILED TO SATISFY THE REQUIREMENTS FOR THE ISSUANCE OF A PRELIMINARY INJUNCTION.  CONSEQUENTLY, HER REQUEST FOR PRELIMINARY RELIEF SHOULD BE DENIED.

The Second Circuit has held that, as a general matter, a party seeking a preliminary injunction must establish irreparable harm and -

> either (a) likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party.

Plaza Health Laboratories, Inc. v. Perales, 878 F.2d 577, 580 (2d Cir. 1989).  A moving party will normally be permitted to utilize either prong of the above-described test.  However, in cases where the moving party seeks an injunction that would alter the status quo by requiring some affirmative act, the more stringent

test is required.  See Tom Doherty Assoc., Inc. v. Saban Entertainment, Inc., 60 F.3d 27, 33-35 (2d Cir. 1995).  In such cases, the injunction should be denied, unless the moving party establishes, along with irreparable injury, a "clear or substantial showing of a likelihood of success".  Id. at 35.  See also Medical Society of the State of New York v. Toia, 560 F.2d 535, 538 (2d Cir. 1977) (where the granting of preliminary relief "adversely affect[s] the public interest in a manner which cannot be compensated for by an injunction bond", the moving party bears a greater burden of persuasion).

In the present case, plaintiff concedes that, "[b]ecause [she] seeks a mandatory injunction--i.e., an injunctive order which alters the status quo with a positive act--the heightened standard will apply" (Pl's. Mem. at 7).  Consequently, the court should not grant plaintiff's motion for preliminary relief unless she establishes, along with irreparable injury, a substantial likelihood of success on the merits.

A.  Plaintiff Has Failed to Establish a Substantial Likelihood of Success on the Merits.

In her complaint, plaintiff claims that Congress' decision to provide Federal funding under the Medicaid program for NF room-and-board charges, while precluding such funding for ALF residential services, violates the Equal Protection and Due Process clauses of the United States Constitution (Complaint, at ¶¶ 7 and 9).  The Secretary has addressed these claims in detail,

- 8 -

establishing that Congress could have had a rational basis for enacting the challenged distinction and, consequently, that plaintiff's Equal Protection and Due Process claims are without merit (Fed. Def's. Mem. at 13-21).  More specifically, in enacting the challenged distinction, Congress could have rationally concluded: (1) that individuals who reside in NFs generally have more serious medical or health problems than ALF residents and, consequently, that it is appropriate, given the Federal government's limited financial resources, to provide Federal funding for NF room-and-board expenses, but not for ALF residential charges (id. at 15-16); (2) that, given the absence of Federal certification standards for ALFs, it would be unwise to provide billions of dollars in Federal funding for the residential services provided by such facilities (id. at 16-17); (3) that providing Medicaid funding for ALF residential charges would inappropriately shift costs from the Federal Supplemental Security Income program to the State Medicaid programs (id. at 17-18); and (4) that providing Medicaid coverage for ALF residential charges would encourage large numbers of Medicaid recipients who are currently living in their homes to move to ALFs, greatly increasing Federal and State expenditures under the Medicaid program (id. at 18 n. 11).  Each of these conclusions would have been sufficient to support the challenged

distinction.[4]

Plaintiff has not specifically discussed any of these issues in her most recent memorandum.  However, plaintiff cannot avoid the conclusion that she has no likelihood of success on her Equal Protection and Due Process claims.

Plaintiff has no better chance of prevailing on her ADA claim.  Plaintiff did not include an ADA claim in her complaint, and she has not moved to amend her complaint.  However, even if these defects are overlooked, it is clear that plaintiff has no viable ADA claim against the Secretary.

The ADA prohibits a "public entity" from discriminating against an individual because of his or her disability, or from excluding a disabled individual from participation in any service, program, or activity provided by the public entity.  42 U.S.C. § 12132.  The ADA defines a public entity as:

> (A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority....

42 U.S.C. § 12131(1).  The ADA clearly does not include "federal executive agencies nor their Secretaries as 'public entities'".  Zingher v. Yacavone, 30 F. Supp. 2d 446, 452 (D. Vt. 1997),

---

[4] The Secretary also noted that plaintiff does not have a property interest in the receipt of Medicaid funding for the residential charges of Arden Courts and, thus, that she has no viable Due Process claim (id. at 19-20).

- 10 -

aff'd. 165 F.3d 1015 (2d 1999).  Consequently, there is no merit to plaintiff's claim that the Secretary has violated the ADA. See also Isle Royale Boaters Assoc. v. Norton, 154 F.Supp.2d 1098, 1135 (W.D. Mich. 2001), aff'd. 330 F.3d 777 (6th Cir. 2003) ("[p]laintiffs may not sue [the National Park Service], a unit of the Federal government, for discrimination under the ADA).

B.  Plaintiff Has Failed to Establish that She Will Suffer Irreparable Harm if a Preliminary Injunction Is Denied.

Plaintiff alleges that she will suffer irreparable harm if a preliminary injunction is denied because she will be forced to suffer the "trauma of a forced removal" to a NF (Pl's. Mem. at 4).  By her own admission, however, plaintiff has sufficient funds to continue living at Arden Courts until at least September of 2004 (Pl's. Ex. A, at 1).  Moreover, plaintiff has not established that admission to a NF is the only viable alternative for her.  She makes no effort to establish that there are no alternative placements available, or that she is unable to live in a community setting that is less expensive than Arden Courts.

Furthermore, while plaintiff appears to equate admission to a NF with incarceration, such a characterization is far from accurate.  By Federal regulation, NF residents retain their rights to dignity, self determination, and privacy.  42 C.F.R. §§ 483.10 and 483.15.  Moreover, NFs are required to provide their residents with safe, comfortable, and private living environments, 42 C.F.R. § 483.70(d)-(h), as well as with social

services and recreational activities.  42 C.F.R. § 483.15(f) and (g).  Given the existence of these Federally-recognized and enforced rights, it would be inappropriate to assume that admission to a NF necessarily results in irreparable injury.

Plaintiff has also failed to establish that the balance of hardships tips decidedly in her favor.  While plaintiff alleges that defendants would "save thousands of dollars in unnecessary health costs" by paying for her stay at Arden Courts, rather than a Medicaid-certified NF (Pl's. Mem. at 14), she makes no effort to substantiate this contention.  The record contains no evidence as to the payments made by the State of Connecticut for nursing home care.

Moreover, as the Secretary noted in her prior memorandum, health care experts are uncertain as to whether the provision of Medicaid funding for ALF room-and-board charges would be cost effective (Fed. Def's. Mem. at 18 n. 12).  Moreover, the provision of such funding could greatly increase Federal and State expenditures under the Medicaid program, by encouraging large numbers of Medicaid recipients who are currently living in their homes to move to ALFs (<u>id.</u> at 18 n. 11).

CONCLUSION

For the reasons discussed in this memorandum, plaintiff has failed to satisfy the requirements for the issuance of a preliminary injunction.  Consequently, her motion for injunctive

relief should be denied.

                                          Respectfully submitted,

                                          KEVIN J. O'CONNOR
                                          UNITED STATES ATTORNEY


                                          CAROLYN A. IKARI
                                          ASSISTANT UNITED STATES ATTORNEY
                                          450 Main Street, Room 328
                                          Hartford, Connecticut  06103
                                          (860) 947-1101
                                          Federal Bar No. ct13437


OF COUNSEL:

ALEX M. AZAR II
General Counsel

NANCY S. NEMON
Chief Counsel, Region I

CLIFFORD M. PIERCE
Assistant Regional Counsel
U.S. Department of  Health and Human Services
J.F.K. Building, Room 2250
Boston, Massachusetts  02203
(617) 565-2379

CERTIFICATE OF SERVICE

    This is to certify that a copy of the foregoing memorandum has been mailed, first-class, postage prepaid, on this 12th day of May 2004, to:

    Raymond J. Rigat  
    Gilbride & Rigat  
    23 East Main Street  
    Clinton, Connecticut  06413

    Tanya Feliciano  
    Office of the Attorney General  
    Health & Human Services  
    55 Elm Street  
    P.O. Box 120  
    Hartford, Connecticut  06101

                                                            _____  
                                                            CAROLYN A. IKARI  
                                                            ASSISTANT U.S. ATTORNEY