**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MICHELA LEOCATA, THROUGH | : | |
| MATTHEW T. GILBRIDE, ESQ., | : | |
| CONSERVATOR OVER HER ESTATE | : | |
| AND NEXT OF FRIEND | : | CIVIL ACTION NO. 3:02CV1066 (CFD) |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES DEPARTMENT OF | : | |
| HEALTH AND HUMAN SERVICES, | : | |
| TOMMY THOMPSON, SECRETARY | : | |
| and PATRICIA WILSON-COKER, | : | |
| COMMISSIONER DEPARTMENT | : | |
| OF SOCIAL SERVICES | : | |
| *Defendants* | : | July 12, 2004 |

<u>**STATE DEFENDANT RESPONSE TO ORDER TO SHOW CAUSE**</u>


Pursuant to the Court's order dated June 22, 2004, the Defendant State of Connecticut

hereby submits the following[1]:

I.      **Proposed Findings of Fact**

1.      The Plaintiff in this matter currently resides at Arden Courts in Farmington,

Connecticut.  (Plaintiff's Complaint)

2.      The Plaintiff in this matter is not a recipient of Medicaid (Title XIX) medical

assistance benefits.  (Testimony of David Parrella, Michelle Parsons, State of

Connecticut, Department of Social Services.)

---

[1] As of the date of this filing, the Plaintiff has not received Court leave to include her proposed allegations concerning the Americans With Disabilities Act.  The State Defendant hereby reserves its right to supplement this filing accordingly should such leave be granted and an amended complaint filed.  The State Defendant will be filing a separate objection to the Plaintiff's requested leave  to amend.

3.      The Plaintiff has not, as of this date, filed an application for Medicaid assistance. (Testimony of David Parrella, Michelle Parsons, State of Connecticut, Department of Social Services)

4.      On average, it takes three (3) months to process a Title XIX application. (Testimony of David Parrella, Michelle Parsons, State of Connecticut, Department of Social Services)

5.      Arden Courts is a managed residential community as defined by Conn. Gen. Stat. §19a-490 and Regs. of Conn. State Agencies § 19-13-D105.  (Copy of registration of Arden Courts as managed residential community as filed with the State of Connecticut, Department of Public Health; testimony of Vicki Carlson, Department of  Public Health.)

6.      Residents at Arden Courts, including the Plaintiff, can receive assisted living services from a licensed assisted living services agency.  (Copy of license of assisted living services agency providing assisted living services to residents at Arden Courts; testimony of Vicki Carlson, Department of Public Health.)

7.      Arden Courts is not licensed as a skilled nursing facility, intermediate care facility, or hospital.  (Plaintiff's Complaint; Testimony of Vicki Carlson, State of Connecticut, Department of Public Health.)

8.      The managed residential community at Arden Courts does not hold a license of any kind.  (Testimony of Vicki Carlson, State of Connecticut, Department of Public Health.)

9.      Arden Courts is not certified by the Medicaid program and does not have a Medicaid Provider Number or a Provider Contract with the State of Connecticut to

provide Medicaid services of any kind. (Testimony of David Parrella, Michelle
Parsons, State of Connecticut, Department of Social Services)

10.     The State of Connecticut has instituted a pilot program pursuant to P.A. 02-7, §§ 27, 28, which only provides for Title XIX assistance for the assisted living services set forth in Regs. Conn. State Agencies, §§ 19-13-D105(a)(2)(4), not for the room and board provided by managed residential care communities set forth in Regs. Conn. State Agencies, §§ 19-13-D105(a)(9). (Testimony of Michelle Parsons, Department of Social Services)

11.     Arden Courts does not participate in the State of Connecticut's pilot program instituted pursuant to P.A. 02-7, §§ 27, 28, nor does the State of Connecticut have any record that Arden Courts ever applied to participate in that program. (Testimony of Michelle Parsons, State of Connecticut, Department of Social Services)

12.     Participants in the State of Connecticut's pilot program instituted pursuant to P.A. 02-7, §§ 27, 28 must already be eligible for services under either the State's existing home and community based waiver or the state funded portion of the Connecticut Home Care for the Elderly program established under Conn. Gen. Stat. § 17b-352.

13.     The Plaintiff filed her Complaint on or about June 19, 2002. (Plaintiff's Complaint)

14.     The Plaintiff filed her request for a "Temporary Injunction" on or about April 26, 2004. (Plaintiff's Motion for Temporary Injunction.)

15.     While the relevant state and federal statutes and administrative regulations do allow Medicaid benefits to be paid to "skilled nursing care facilities," they do not allow such payment for "assisted living facilities." (Plaintiff's Complaint, ¶ 7).

16.     In order to receive Medicaid reimbursement, hospitals and skilled nursing facilities must meet both state licensing and federal certification standards. (Testimony of David Parrella, Michelle Parsons, State of Connecticut, Department of Social Services)

17.     If the State of Connecticut would not receive federal reimbursement for any Medicaid funds paid to the Plaintiff or Arden Courts, or to any assisted living services agency/managed residential community.  (Complaint, ¶4; Testimony of David Parrella, Department of Social Services.)

II.     **Proposed Conclusions of Law**

    A.     **Standing**

1.  Article III of the United States Constitution limits the powers of federal courts.

2.  The threshold question in determining whether a litigant is entitled to have the court decide the merits of the dispute or of particular issues is whether the plaintiff has in fact suffered a "distinct and palpable injury" as a result of "putatively illegal conduct of the Defendant."  Gladstone, Realtors v. Bellwood, 441 U.S. 91, 100, 99 S.Ct.

3.  In order to have standing, the plaintiff must show that the claimed injury "can fairly be traced to the challenged action."  Simon v. Eastern Kentucky Welfare Rights Organization,  426 U.S. 26, 41, 96 S.Ct. 1917, 48 L.Ed. 2d 450 (1976).

    B.     **Standard for Preliminary Injunction**

4.     When seeking a preliminary injunction that will affect "government action taken in the public interest pursuant to a statutory or regulatory scheme," the moving party

must show:  (1) 'it will suffer irreparable harm' absent the injunction and (2) 'a likelihood of success on the merits."  <u>Rodriguez v. DeBono</u>, 175 F.3d 227, 233 (2d Cir. 1998)

**C.    Merits of Plaintiff's Claim**

5.  In order for the Plaintiff to prevail on her equal protection claim, she would have to demonstrate that she has been treated differently from other individuals in her circumstances. <u>Brandon v. District of Columbia Board of Parole</u>, 823 F.2d 644, 650 (D.C. Cir. 1987).

6.  In order to prevail on her due process claim,  the plaintiff must identify a property interest and explain how it has been interfered with by the government.  <u>Greene v. Town of Blooming Grove</u>, 935 F.2d 507. 510 (2d Cir. N.Y. 1991), cert. denied, 502 U.S. 1005, 112 S.Ct. 639, 116 L.Ed. 2d 657 (1991).

7.  The United States Supreme Court has held that "[p]ossession of a property interest in a government benefit requires more than an abstract need or desire for it; there must be a `legitimate claim of entitlement to it.'"  <u>Board of Regents v. Roth</u>, 408 U.S. 564, 577, 92 S.Ct. 2701, 22 L.Ed. 2d 548 (1972).

8.  Title II of the Americans With Disabilities Act ("ADA) was enacted to prevent unequal administration of state services and programs, including systematic deprivations of fundamental rights.  <u>Tennessee, Petitioner, v. George Lane Et Al.</u>, ___ U.S. ___; 124 S.Ct. 1978, 1989, 158 L.Ed. 820, 837.  (2004).

9.  The United States Supreme Court, in <u>Olmstead v. L.C. ex Rel. Zimring</u>, 527 U.S. 581, 119 S.Ct. 2176, 2181 144 L.Ed. 2d 540 (1999), held that a state's failure to provide services to disabled persons in "community settings" violates the ADA only

when the State's treatment professionals have determined that community placement is appropriate, the transfer from institutional care to a less restrictive setting is not opposed by the affected individual, and the placement can be reasonably accommodated, taking into account the resources available to the State and the needs of others with mental disabilities.

10. The Second Circuit has held that "[t]he ADA requires only that a particular service provided to some not be denied to disabled people . . . ." Rodriguez v. City of New York, 197 F.3d 611 (2d Cir. 1999).

11. The Medicaid Program, established under Title XIX of the Social Security Act, , is a jointly funded state and federal program that pays for necessary medical care for qualifying low-income individuals.   42 U.S.C. § 1396 et. seq.

12. There is no provision in the federal Medicaid statute that would allow coverage for the residential or room and board component of an assisted living facility, or, in the more specific case of the State of Connecticut, for the cost of a managed residential community where ALSA services can be provided.  42 U.S.C. § 1396 *et. seq.*

13. States participating in the Medicaid program must administer the program based on a state plan approved by the Center for Medicare and Medicaid Services, a division of the United States Department of Health and Human Services.  42 U.S.C. § 1396(a); 42 C.F.R. § 430.10.

14. In addition to services covered by the state plan, the Secretary of the Department of Health and Human Services has the authority and discretion to grant waivers to allow for provision of certain "home and community based services" that would not otherwise qualify as medical assistance under the federal Medicaid statute, but

only to individuals who, but for the provision of such services, would require the level of care provided in a hospital, nursing facility, or ICF/MR.    However, "room and board" is specifically excluded by statute as a "home and community based service."  42 U.S.C. § 1396n(c)(1); 42 U.S.C. § 1396t(a)(9) and § 1396u(f)(1).

15. Failure by a state to conform a state plan/approved waiver to federal requirements or failure  to administer the plan or waiver program in conformity with those requirements may result in a loss of federal funds for the program.  42 U.S.C. § 1396c.

16. The federal Medicaid statute defines "medical assistance" to include various medical, health, and supportive services.  42 U.S.C. § 1396d(a).

17. The federal Medicaid statute mandates coverage of certain services, such as hospital and nursing facility care, while other services, such as physical therapy, may be provided at the state's option.  42 C.F.R. §§ 440.210-440.225.

18. Only the mandatory and optional services in a state's approved state plan or approved waiver program will be reimbursed by CMS.  42 USC § 1396c.

19. The federal Medicaid program mandates coverage for three basic inpatient services, including room and board.  These three services are hospitals, nursing facilities, and certain intermediate care facilities for the mentally retarded.  42 U.S.C. §§1396d(a)(1);(4);(15)(16).

20. In the State of Connecticut, assisted living services are defined as nursing and assistance with activities of daily living (ambulation, feeding, bathing, dressing, grooming, toileting, oral hygiene, transfers, exercise, and supervision of self-

administration of medications.)  "Room and board" is not assisted living services in the State of Connecticut.  Regs. Conn. Agencies § 19-13-D105(a)(2)(4).

21.  In the State of Connecticut, assisted living services agencies provide their services at managed residential communities, which are not licensed or certified, but which must register with the State of Connecticut, Department of Public Health.  Managed residential communities are required to provide apartments and certain "core services," including meals, transportation, security, call system, linen and laundry services, housekeeping and maintenance, social/recreational programs and on-site service coordinators, none of which are medical assistance or home and community based services that are or could be covered by Medicaid.  Regs. Of Conn. State Agencies, § 19-13-D105(a)(9).

22. Hospitals, nursing facilities, and intermediate care facilities participating in the Medicaid program must meet both state licensing and federal certification standards in order to receive Medicaid reimbursement.  42 U.S.C. § 1396d(c)(d)(h), 1396r; 42 C.F.R. §§ 440.10(a)(3)(iii), 440.150(a)(3), 441.151(b).

23. The federal Medicaid statute's definition of a nursing facility is an institution which

> (1) is primarily engaged in providing to residents
>    (A)  skilled nursing care and related services for residents who require medical or nursing care,
>    (B) rehabilitation services for the rehabilitation of injured, disabled, or sick persons,
>    (C) on a regular basis, health-related care and services to individuals who because of their mental or physical condition require care and services (above the level of room and board) which can be made available to them only through institutional facilities . . .;
>    (2) has in effect a transfer agreement . . . with one or more . . . hospitals . . .
>    and

(3) meets the requirements for a nursing facility described in sections (b),
(c), and  (d) of this section [pertaining to the provision of services,
residents' rights, sanitation, physical environment, and other matters].

24. To participate in the Medicaid program, a nursing facility must meet certification

requirements and is subject to on-site inspections or "surveys."  42 U.S.C. §

1396r(a)(3); 42 C.F.R. §§ 483.1, *et. seq*.

25. In order to be admitted to a nursing facility, a physician must personally approve

in writing a recommendation that the individual be admitted.  42 C.F.R. § 483.40.

26. Neither the State of Connecticut, Department of Public Health, nor the State of

Connecticut, Department of Social Services, has jurisdiction over managed

residential care communities.  (Testimony of Vicki Carlson, State of Connecticut,

Department of Public Health; testimony of David Parrella, State of Connecticut,

Department of Social Services.)

27. In the State of Connecticut, an individual may reside in an apartment in a

managed residential community, but not receive assisted living services.

(Testimony of Vicki Carlson, State of Connecticut, Department of Public Health)

III.        **Witnesses**

1.  David Parrella, Director of Medical Care Administration (State of Connecticut,

Department of Social Services)"

Mr. Parrella will testify generally about the State of Connecticut's Medicaid program

and the services provided; that the Plaintiff is not a recipient of nor has she applied

for Title XIX assistance; that, on average, it takes three months to process a Title XIX

application; that even if the Plaintiff exhausts her assets by October, 2004, she is not

automatically entitled to Medicaid assistance; that Arden Courts is not a certified

9

Medicaid provider and has not executed the requisite Provider Agreement with the State of Connecticut; that if the State of Connecticut paid any funds under its Medicaid program to the Plaintiff or Arden Courts or any managed residential community that provided access to assisted living services, it would not receive federal reimbursement; and that no other individual in the State of Connecticut in the Plaintiff's circumstances receives Medicaid assistance; and about Medicaid payments to nursing facilities.

2.  Michele Parsons, Manager of Alternate Care Unit, (State of Connecticut, Department of Social Services):

Ms. Parsons will testify that the limited pilot project in the State of Connecticut that allows for Title XIX reimbursement provides for reimbursement of assisted living services only, as defined by state regulations, not for room and board and other "core services"; that Arden Courts does not participate in that program; that the Plaintiff has not applied to participate in the program; and that Plaintiff does not appear to qualify to participate in the program.

3.  Victoria Carlson,     (State of Connecticut, Department of Public Health):

Ms. Carlson will testify that the State of Connecticut's licensing statutes and regulations do not provide for an "assisted living facility," but rather for an "assisted living services agency" to provide for such services at a registered but unlicensed managed residential care community; and  that the State of Connecticut, Department of Public health conduct certification surveys for hospitals and nursing facilities participating in the Medicaid program.

10

IV.     **Exhibits**

1.  Blank form Title XIX Provider Agreement for nursing facilities.

2.  Blank form Title XIX medical assistance application.

3.  CMS Pamphlet Entitled "Medicaid At-a-Glance 2003"

4.  S. Rep. No. 158(1), 107th Congress, 2d Session 2002, <u>Developments in Aging:  1999 and 2000-Volume 1</u>, available at WL 126111, at *110 (Leg. Hist.)("Senate Report")

5.  Plaintiff's contract(s) with Arden Courts regarding residency and assisted living services.

6.  <u>AARP Connecticut Assisted Living Survey</u>, February 2002

7.  <u>OLR Research Report:  Financial Assistance for Assisted Living,</u> Nov. 28, 2001.

8.  Copy of registration of Arden Courts as managed residential community as filed with the State of Connecticut, Department of Public Health.

9.  Copy of license of assisted living services agency providing assisted living services to residents at Arden Courts.

DEFENDANT
PATRICIA WILSON-COKER
COMMISSIONER OF DEPARTMENT OF
SOCIAL SERVICES

RICHARD BLUMENTHAL
ATTORNEY GENERAL

Richard J. Lynch
Assistant Attorney General

BY: _____
Tanya Feliciano DeMattia
Assistant Attorney General
Federal Bar No ct  14996
55 Elm Street, P.O. Box 120
Hartford, CT  06141-0120
Tel: (860) 808-5210
Fax: (860) 808-5385
tanya.feliciano@po.state.ct.us

## CERTIFICATION

I hereby certify that a copy of the foregoing <u>Defendant Commissioner's Opposition To</u>

<u>Plaintiff's Motion For A Preliminary Injunction</u> was mailed in accordance with Rule 5(b) of the

Federal Rules of Civil Procedure on this 12th day of July, 2004, first class postage prepaid to:

Raymond J. Rigat, Esq.
Gilbride & Rigat
23 East Main Street
Clinton, CT 06413

Carolyn A. Ikari
Assistant U.S. Attorney
450 Main Street, Room 328
Hartford, CT  06103

Clifford M. Pierce
Assistant Regional Counsel
Department of Health and Human Resources
J.F.K. Building, Room 2250
Boston, MA  02203


_____
Tanya Feliciano DeMattia
Assistant Attorney General
Federal Bar No. ct14996