UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MICHELA LEOCATA, through | ) | |
| Matthew T. Gilbride, Esq., | ) | |
| Conservator over her Estate | ) | |
| and Next Friend, | ) | |
| | ) | |
| Plaintiff, | ) | Civ. No. 3:02CV1066 (CFD) |
| | ) | |
| v. | ) | |
| | ) | |
| PATRICIA WILSON-COKER, | ) | |
| Commissioner, Connecticut | ) | |
| Department of Social Services; | ) | |
| and TOMMY G. THOMPSON, | ) | |
| Secretary of the U.S. | ) | |
| Department of Health and | ) | |
| Human Services, | ) | |
| Defendants. | ) | |
| | ) | JULY 9, 2004 |

**DEFENDANT SECRETARY OF HEALTH AND HUMAN SERVICES'
PRE-HEARING SUBMISSION**

Pursuant to this Court's Order dated June 22, 2004, the
federal defendant, Tommy G. Thompson, Secretary of the U.S.
Department of Health and Human Services, submits the following:

## I.    INTRODUCTION

A hearing on Plaintiff's "Motion For Temporary Injunction"
is set for Monday, July 19, 2004 at 10:00 a.m.  Plaintiff
initiated this civil action by Complaint **[docket no. 1]** on June
19, 2002.  Plaintiff lives in Arden Courts, an assisted living
facility, and she seeks this Court's intervention to assure that
she will not have to move to a nursing facility when her savings
run out.  Both defendants moved to dismiss **[no. 15, 20]** on the
basis of lack of standing and failure to state a claim.  The

motions are pending.

On April 27, 2004, Plaintiff filed the motion for temporary injunction, asserting that her money is running out and the Court should order the defendants to cover her Arden Courts room and board under the Medicaid program.  The motion principally relies on the Americans With Disabilities Act (ADA), which is not a claim in the Complaint.  In a telephone status conference with the Court yesterday, Plaintiff's counsel stated that he intends to seek leave to amend the Complaint to include an ADA claim.

## II.  STANDARD: "CLEAR OR SUBSTANTIAL SHOWING OF A LIKELIHOOD OF SUCCESS"

Although the Court's June 22 Order requires the defendants to show cause why a preliminary injunction should not issue, the burden of production and persuasion is the Plaintiff's.

The Second Circuit has held that, as a general matter, a party seeking a preliminary injunction must establish irreparable harm and –

> either (a) likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party.

Plaza Health Laboratories, Inc. v. Perales, 878 F.2d 577, 580 (2d Cir. 1989).

However, in cases where the moving party seeks an injunction

- 2 -

that would alter the status quo by requiring some affirmative act, a more stringent test is required.  See Tom Doherty Assoc., Inc. v. Saban Entertainment, Inc., 60 F.3d 27, 33-35 (2d Cir. 1995).  In such cases, the injunction should be denied unless the moving party establishes, along with irreparable injury, a "clear or substantial showing of a likelihood of success".  Id. at 35. See also Medical Society of the State of New York v. Toia, 560 F.2d 535, 538 (2d Cir. 1977) (where the granting of preliminary relief "adversely affect[s] the public interest in a manner which cannot be compensated for by an injunction bond", the moving party bears a greater burden of persuasion).

In the present case, plaintiff concedes that, "[b]ecause [she] seeks a mandatory injunction--i.e., an injunctive order which alters the status quo with a positive act--the heightened standard will apply" (Pl's. Mem. **[no. 28]** at 7).

For the reasons set forth in the pending Motion To Dismiss, the earlier-filed Opposition To Motion For Temporary Injunction **[no. 29],** and in this Pre-Hearing Submission, the Plaintiff will not be able to make a clear or substantial showing of a likelihood of success in this action.  Consequently, the court should not grant the plaintiff's motion for preliminary relief.

**III. PROPOSED CONCLUSIONS OF LAW**

Plaintiff **does not** stipulate to the federal defendant's proposed conclusions of law.

The Medicaid Program

(1)  The Medicaid program, established in 1965 as Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq., provides Federal funding to States that choose to pay the costs of medical care for certain needy individuals and families.  Although participation in Medicaid is voluntary, once a State elects to participate, it must comply with all requirements of Title XIX. To qualify for Federal funding under Medicaid, a State must submit to the Secretary a "plan for medical assistance" that describes the nature and scope of the State's program.  42 U.S.C. § 1396a(a).  If the Secretary approves the plan, the State will receive Federal funding for a portion of the payments made under its plan.  42 U.S.C. § 1396b.

(2)  The Medicaid statute defines "medical assistance" to include a variety of medical, health, and supportive services. 42 U.S.C. § 1396d(a).  The term includes three basic types of inpatient care.  Specifically, the statute provides coverage for inpatient services, including room and board, provided by hospitals, NFs, and intermediate care facilities for the mentally retarded ("ICF/MRs").  See 42 U.S.C. § 1396d(a)(1),(4),(14),(15), and (16).  The statute also establishes certification standards or participation requirements for such facilities.  See 42 U.S.C. §§ 1396d(c),(d),(h) and 1396r.  See also 42 C.F.R. §§ 440.10(a)(3)(iii), 440.150(a)(3), 441.151(b), and 483, Subparts B

and I.

Nursing Facilities and Assisted Living Facilities

(3)  The statute defines a NF as an institution:

(1) which is primarily engaged in providing -

(A) skilled nursing care and related services for residents who require medical or nursing care,

(B) rehabilitation services for the rehabilitation of injured, disabled, or sick persons, or

(C) on a regular basis, health-related care and services to individuals who because of their mental or physical condition require care and services (above the level of room and board) which can be made available to them only through institutional facilities ...;

(2) which has in effect a transfer agreement with one or more Medicare-certified hospitals, and (3) which complies with Federal standards pertaining to the provision of services, residents' rights, sanitation and physical environment, and other matters. 42 U.S.C. § 1396r(a).

(4)  To participate in Medicaid, a NF must be periodically "certified", based on the findings of on-site "surveys", as meeting the applicable health and safety requirements.  42 U.S.C. § 1396r(a)(3).  See also 42 C.F.R. § 483.1 et seq. (establishing standards for skilled nursing facilities under Medicare and NFs

- 5 -

under Medicaid).  A NF must enter into a provider agreement with the State and the Secretary (if the facility also participates in Medicare).  42 U.S.C. § 1395cc(a); 42 U.S.C. § 1396a(a)(27).  If it is determined, through later surveys, that a NF no longer meets program requirements, various sanctions may be imposed, including termination of the facility's provider agreement.  42 U.S.C. § 1396r(h).

(5)  The Medicaid statute makes no explicit reference to ALFs.  Hence, the statute neither provides coverage for the residential or room-and-board charges of an ALF, nor establishes any certification requirements for such facilities.  See S. Rep. No. 158(1), 107th Cong., 2nd Sess. 2002, Developments in Aging: 1999 and 2000-Volume 1, available at 2002 WL 1266111, at *111 (Leg. Hist.)("Senate Report")("[u]nlike for nursing homes, there are no Federal regulations governing [quality of care in] ALFs"). See also State of Texas v. Department of Health and Human Services, 61 F.3d 438, 442 (5th Cir. 1995).

(6)  The term "medical assistance", however, includes a variety of health or supportive services that can be provided under a State plan to individuals who reside in their homes or in community settings other than a hospital, NF, or ICF/MR, such as an ALF.  These services include various home health services (e.g., skilled nursing and home health aide care) and "personal care services".  42 U.S.C. § 1396d(a)(7) and (24); 42 C.F.R. §§

440.70 and 440.167.  Under the personal care benefit, a State may
provide a wide range of human assistance (e.g., assistance with
eating and dressing, housework, grocery shopping, laundry, meal
preparation, and medication management) to individuals who reside
in ALFs or other community settings.  Mollica, Robert L., State
Assisted Living Practices and Options, at 9-10, September 2001
("Mollica").

(7) In addition to the foregoing State-plan services, the
Secretary may grant a waiver authorizing a State to furnish
certain "home or community-based" ("HCB") services (e.g.,
homemaker, personal care, and case management services) that
would otherwise not qualify as medical assistance under the
program, or that would be provided in a manner that would
otherwise violate certain Medicaid statutory requirements, but
only if such services are furnished to individuals who, but for
the provision of such services, would require the level of care
provided in a hospital, NF, or ICF/MR.  42 U.S.C. § 1396n(c); 42
C.F.R. §§ 440.180 and 441.300 et seq.  See generally Skandalis v.
Rowe, 14 F.3d 173, 176 (2d Cir. 1994).  HCB services enable
elderly, disabled, or chronically-ill persons, who would
otherwise be institutionalized, to live in the community.
Significantly, however, the statute precludes a State from
including "room and board" as an HCB service.  See 42 U.S.C. §
1396n(c)(1).  See also 42 U.S.C. §§ 1396t(a)(9) and

- 7 -

1396u(f)(1)(excluding "room and board" from "home and community care" and "community supported living arrangements services").

(8)  Pursuant to the above-cited provisions, a State may receive Federal funding under Medicaid for a broad range of personal, supportive, or health services provided to ALF residents.  See Senate Report, at 110-111; Mollica, at 8 ("Medicaid is very flexible and offers states an array of options for setting eligibility and covering [ALF] services").  A State may provide these services under its State plan, id., at 5, 8-11, and 50, or under a HCB waiver.  Id. at 8.

(9)  However, the Medicaid statute prohibits Federal funding for ALF room-and-board charges.  See Senate Report, at 111 (while Medicaid pays for room and board in NFs and hospitals, the program "only pays for the personal and supportive care costs" of ALFs); Mollica, at 12 (Medicaid "has flexible provisions for paying for [ALF] services, but ... cannot cover the room and board costs").

(10)  By Federal regulation, NF residents retain their rights to dignity, self determination, and privacy.  42 C.F.R. §§ 483.10 and 483.15.  Moreover, NFs are required to provide their residents with safe, comfortable, and private living environments, 42 C.F.R. § 483.70(d)-(h), as well as with social services and recreational activities.  42 C.F.R. § 483.15(f) and (g).

- 8 -

Federal Supplemental Security Income ("SSI")

(11)     Medicaid recipients who reside in ALFs typically use their Federal Supplemental Security Income ("SSI") benefits, together with any SSI supplements paid by the State, to pay for room-and-board charges.  Senate Report at *111; Mollica at 12, 50 ("[s]tate supplements are often made to provide additional support for room and board").

(12) In 2002, the Federal payment standard for SSI recipients who resided in ALFs or other community settings was $545 a month.  However, SSI recipients who resided in NFs (where room-and-board charges are covered by Medicaid) received only a personal needs allowance of $30 a month.  Id. at 50, 53.

(13)  ALF residents generally need some personal care services or assistance from staff, but not comprehensive nursing care; in contrast, NF residents are typically very frail individuals who require nursing care and round-the-clock supervision or are technology-dependent.  Senate Report, at 110-111.

Plaintiff's Room And Board Charges At Arden Courts Do Not Qualify For Medicaid Reimbursement

(14) Payments made by the State of Connecticut to the Plaintiff for room and board at Arden Courts (or any other ALF) will not be reimbursed by the federal government under the Medicaid program because it is not an NF.  42 U.S.C. § 1396r(a).

(15) Payments made by the State of Connecticut to the

Plaintiff for room and board at her ALF will not be reimbursed by the federal government under the Medicaid program because the Plaintiff is not covered by Medicaid. (Complaint, ¶ 4).

(16) Payments made by the State of Connecticut to the Plaintiff for room and board at her ALF will not be reimbursed by the federal government under the Medicaid program because room and board are not "medical assistance."  42 U.S.C. § 1396n(c)(1); 42 U.S.C. §§ 1396t(a)(9), 1396 u(f)(1).

<u>Preliminary Injunction</u>

(17)  As a general matter, a party seeking a preliminary injunction must establish irreparable harm and -

> either (a) likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party.

<u>Plaza Health Laboratories, Inc. v. Perales</u>, 878 F.2d 577, 580 (2d Cir. 1989).  A moving party will normally be permitted to utilize either prong of the above-described test.  However, in cases where the moving party seeks an injunction that would alter the status quo by requiring some affirmative act, the more stringent test is required.  See <u>Tom Doherty Assoc., Inc. v. Saban Entertainment, Inc.</u>, 60 F.3d 27, 33-35 (2d Cir. 1995).  In such cases, the injunction should be denied, unless the moving party

establishes, along with irreparable injury, a "clear or substantial showing of a likelihood of success". Id. at 35. See also Medical Society of the State of New York v. Toia, 560 F.2d 535, 538 (2d Cir. 1977).

(18)  Because plaintiff in this case seeks a mandatory injunction--i.e., an injunction that alters the status quo with a positive act--the heightened standard applies.  Consequently, to obtain the requested injunction, plaintiff is required to establish, along with irreparable injury, a substantial likelihood of success on the merits.

Equal Protection: Rational Basis Review

(19)  Plaintiff is not likely to prevail on the merits of her Equal Protection claim.

(20)  Because the statutory classification challenged by plaintiff neither burdens the exercise of a fundamental right, such as the right of interstate travel, nor creates a suspect classification, such as a classification based on race, the exacting "strict scrutiny" or "compelling state interest" test has no application in this case.  See City of New Orleans v. Dukes, 427 U.S. 297, 303 (1976) ("New Orleans").

(21)  A statutory classification in the area of economic or social welfare, which includes Medicaid, is presumptively constitutional, and must be upheld against an Equal Protection challenge, as long as the statute has some rational basis.  See

- 11 -

Kadrmas v. Dickinson Public Schools, 487 U.S. 450, 462-463
(1988); Bowen v. Flaherty, 483 U.S. 587, 598 (1987); Owens, 476
U.S. at 345; New Orleans, 427 U.S. at 303. ; Rye Psychiatric
Hospital Center, Inc. v. Shalala, 52 F.3d 1163, 1172 (2d Cir.
1995).

(22)  Under a rational-basis analysis, a Court should
"uphold the legislative classification so long as it bears a
rational relation to some legitimate end." Romer v. Evans, 517
U.S. 620, 631 (1996) ("Romer").  Modern Equal Protection
jurisprudence does not permit a court to "judge the wisdom,
fairness, or logic of legislative choices," FCC v. Beach
Communications, Inc., 508 U.S. 307, 313 (1993) ("Beach"), or to
"sit as a superlegislature" on policy determinations that
"neither affect fundamental rights nor proceed along suspect
lines".  New Orleans, 427 U.S. at 303.

(23)  Congress is under no obligation to articulate its
rationale for enacting a statutory classification in the area of
social or economic welfare.  Heller v. Doe, 509 U.S. 312, 320
(1993), quoting Nordlinger v. Hahn, 505 U.S. 1, 15 (1992).
Economic or social legislation must be sustained "if there is any
reasonably conceivable state of facts that could provide a
rational basis for the classification." Beach, 508 U.S. at 313
(emphasis added).  Moreover, a plaintiff has the burden of
"negat[ing] every conceivable basis which might support" a

- 12 -

legislative classification.  <u>Lehnhausen v. Lake Shore Auto Parts Co.</u>, 410 U.S. 356, 364 (1973).

(24) Congress could have had a rational basis for providing coverage under the Medicaid program for the room-and-board charges of a NF, while precluding such coverage for the room-and board charges of an ALF.  In enacting the challenged distinction, Congress could have rationally concluded: (1) that individuals who reside in NFs generally have more serious medical or health problems than ALF residents and, consequently, that it is appropriate, given the Federal government's limited financial resources, to provide Federal funding for NF room-and-board expenses, but not for ALF residential charges; (2) that, given the absence of Federal certification standards for ALFs, it would be unwise to provide billions of dollars in Federal funding for the residential services provided by such facilities; (3) that providing Medicaid funding for ALF residential charges would inappropriately shift costs from the Federal Supplemental Security Income program to the State Medicaid programs; and (4) that providing Medicaid coverage for ALF residential charges would encourage large numbers of Medicaid recipients who are currently living in their homes to move to ALFs, greatly increasing Federal and State expenditures under the Medicaid program.  Each of these conclusions would have been sufficient to support the challenged distinction.

Due Process

(25)  Plaintiff has no likelihood of success on the merits of her Due Process claim.

(26) To prevail on her Due Process claim, plaintiff must establish that she has a property interest in obtaining Medicaid funding for her ALF stay.  Without a valid property interest, a substantive due process claim cannot succeed.  See Board of Regents v. Roth, 408 U.S. 564, 577 (1972); Story v. Green, 978 F.2d 60, 62 (2d Cir. 1992).

(27)  While plaintiff would like to have her stay at Arden Courts paid for by Medicaid, she has no property interest in having that wish fulfilled.  The Medicaid statute defines the scope of plaintiff's entitlement to program benefits, and she cannot articulate a property interest in any payments not permitted by the statute.  See Atkins v. Parker, 472 U.S. 115, 129 (1985); U.S. Railroad Retirement Bd. v. Fritz, 449 U.S. 166, 174 (1980).

(28)  Even if plaintiff has a property interest in having her ALF stay funded by Medicaid, the statutory preclusion of such coverage does not deprive her of substantive Due Process.  The Due Process clause prohibits the withholding of a benefit under a social welfare program "only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification."  Flemming v. Nestor, 363 U.S. 603, 611 (1960).

As with the Equal Protection inquiry, to sustain a Federal statute against a substantive Due Process challenge, "a court need only find some 'reasonably conceivable state of facts that could provide a rational basis' for the legislative action." Beatie v. City of New York, 123 F.3d 707, 712 (2d Cir. 1997), quoting Heller v. Doe, 509 U.S. at 320.

(29)  The Medicaid statute can clearly survive a substantive Due Process challenge.  Congress' desire to conserve Federal funds by limiting inpatient coverage under Medicaid to recipients who have the greatest medical and nursing needs, and to insure that such payments are made to facilities that comply with Federal quality standards, provides ample justification for the omission of coverage for ALF room-and-board charges.

Americans With Disabilities Act ("ADA")

(30)  Plaintiff has no likelihood of success on her claim that the Secretary has violated the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131 et seq.

(31)  Plaintiff's Complaint does not allege a claim under the ADA, and she has not been granted leave to amend her complaint.  Therefore, plaintiff's ADA claim is not properly before this Court.

(32)  The ADA prohibits a "public entity" from discriminating against an individual because of his or her disability, or from excluding a disabled individual from

- 15 -

participation in any service, program, or activity provided by

the public entity.  42 U.S.C. § 12132.  The ADA defines a public

entity as:

> (A) any State or local government; (B) any department,
> agency, special purpose district, or other instrumentality
> of a State or States or local government; and (C) the
> National Railroad Passenger Corporation, and any commuter
> authority....

42 U.S.C. § 12131(1).

(33)  The ADA does not include "federal executive agencies

nor their Secretaries as 'public entities'".  <u>Zingher v.</u>

<u>Yacavone</u>, 30 F.Supp.2d 446, 452 (D. Vt. 1997), <u>aff'd.</u> 165 F.3d

1015 (2d 1999).  Consequently, there is no merit to plaintiff's

claim that the Secretary has violated the ADA.  <u>See also</u> <u>Isle</u>

<u>Royale Boaters Assoc. v. Norton</u>, 154 F.Supp.2d 1098, 1135 (W.D.

Mich. 2001), <u>aff'd.</u> 330 F.3d 777 (6th Cir. 2003).

<u>Standing</u>

(34) Plaintiff lacks standing to maintain this action.

(35)  Article III of the U.S. Constitution limits the

jurisdiction of the Federal Courts to "cases and controversies".

Inherent in this limitation is the requirement that a plaintiff

have standing to sue.  <u>See</u> <u>Whitmore v. Arkansas</u>, 495 U.S. 149,

154-155 (1990) ("<u>Whitmore</u>").  To establish Article III standing,

a plaintiff must satisfy three requirements.

> First, he must demonstrate 'injury in fact'– a harm that is
> both 'concrete' and 'actual or imminent, not conjectural or
> hypothetical'....  Second, he must establish causation – a
> 'fairly ... trace[able]' connection between the alleged

>  injury in fact and the alleged conduct of the defendant....
>  And third, he must demonstrate redressability – a
>  'substantial likelihood' that the requested relief will
>  remedy the alleged injury in fact.

Vermont Agency, 529 U.S. at 771 (citations omitted).  These three

requirements constitute the "'irreducible constitutional

minimum'" of Article III's standing requirement.  Id., quoting

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).

(36)  Plaintiff's claimed status as a future Medicaid

participant is entirely speculative.  Plaintiff in this case has

not satisfied the injury-in-fact requirement.

(37)  Plaintiff has also failed to satisfy the

redressability requirement of standing.  Even if she prevails in

this action, Arden Courts would have no obligation to accept

plaintiff as a Medicaid recipient.  Because ALFs are not required

to participate in Medicaid, providing Medicaid funding for ALF

residential charges would by no means guarantee that plaintiff

can remain at Arden Courts once her personal funds have been

exhausted.  Consequently, the relief that plaintiff seeks will

not remedy the alleged harm.

*Note:*        *Plaintiff seeks preliminary relief in large part based
              on the ADA; however, at this writing, Plaintiff has not
              sought leave to amend her Complaint to include such a
              claim.  Therefore, neither defense counsel nor HHS have
              had an opportunity to examine this issue themselves or
              to confer with other components of HHS and the
              Department of Justice about it.*  ***Defendant Thompson
              advises the Court that due to these circumstances, it
              is probable that, as of the date of the July 19
              hearing, defendant's counsel will not be authorized to***

> ***take a position on the merits of an ADA claim.*** *If the Court permits the Plaintiff to pursue an ADA claim at the hearing, Defendant Thompson reserves the right to supplement the above list with proposed conclusions of law that relate to any new claims added by the Plaintiff.*

## IV.   PROPOSED FINDINGS OF FACT

Plaintiff **does** stipulate to the following four findings of fact proposed by the federal defendant:

(1)   Plaintiff is an elderly woman with advanced dementia who resides in Arden Courts, an Assisted Living Facility ("ALF") in Farmington, Connecticut. (Complaint, ¶ 2).

(2) Plaintiff is not currently eligible for Medicaid benefits, nor has she filed an application for such benefits. (Complaint, ¶ 4).

(3)   Arden Courts is not a licensed health care facility, rather it is a licensed assisted living facility.  (Complaint, ¶ 3).

(4)   Arden Courts is not certified under the Connecticut Medicaid program as a nursing facility ("NF").  (Complaint, ¶ 3)

*Note:*    *Plaintiff seeks preliminary relief in large part based on the ADA; however, at this writing, Plaintiff has not sought leave to amend her Complaint to include such a claim.  Therefore, neither defense counsel nor HHS have had an opportunity to examine this issue themselves or to confer with other components of HHS and the Department of Justice about it.  **Defendant Thompson advises the Court that due to these circumstances, it is probable that, as of the date of the July 19 hearing, defendant's counsel will not be authorized to take a position on the merits of an ADA claim.**  If the Court permits the Plaintiff to pursue an ADA claim at*

*the hearing, Defendant Thompson reserves the right to supplement the above list with proposed findings of fact that relate to any new claims added by the Plaintiff.*

## V. LIST OF FEDERAL DEFENDANT'S WITNESSES

None.

*Note:*    *Plaintiff seeks preliminary relief in large part based on the ADA; however, at this writing, Plaintiff has not sought leave to amend her Complaint to include such a claim. Therefore, neither defense counsel nor HHS have had an opportunity to examine this issue themselves or to confer with other components of HHS and the Department of Justice about it.* ***Defendant Thompson advises the Court that due to these circumstances, it is probable that, as of the date of the July 19 hearing, defendant's counsel will not be authorized to take a position on the merits of an ADA claim.*** *If the Court permits the Plaintiff to pursue an ADA claim at the hearing, Defendant Thompson reserves the right to supplement the above list with witnesses that relate to any new claims added by the Plaintiff.*

## VI.  LIST OF FEDERAL DEFENDANT'S EXHIBITS

A) S. Rep. No. 158(l), 107th Cong., 2nd Sess. 2002,

<u>Developments in Aging: 1999 and 2000-Volume 1</u>, <u>available at</u> 2002

WL 1266111, at *110 (Leg. Hist.)("<u>Senate Report</u>").

B) Mollica, Robert L., <u>State Assisted Living Practices and</u>

<u>Options</u>, at 20-21, September 2001 ("<u>Mollica</u>").

*Note:*    *Plaintiff seeks preliminary relief in large part based on the ADA; however, at this writing, Plaintiff has not sought leave to amend her Complaint to include such a claim. Therefore, neither defense counsel nor HHS have had an opportunity to examine this issue themselves or to confer with other components of HHS and the Department of Justice about it.* ***Defendant Thompson advises the Court that due to these circumstances, it***

- 19 -

*is probable that, as of the date of the July 19 hearing, defendant's counsel will not be authorized to take a position on the merits of an ADA claim.* If the Court permits the Plaintiff to pursue an ADA claim at the hearing, Defendant Thompson reserves the right to supplement the above list with exhibits that relate to any new claims added by the Plaintiff.

## VII. CONCLUSION

The plaintiff has failed to satisfy the requirements for the issuance of a preliminary injunction.  Consequently, her motion for injunctive relief should be denied.  In addition, the federal defendant's pending Motion to Dismiss should be granted with prejudice.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY


CAROLYN A. IKARI
ASSISTANT UNITED STATES ATTORNEY
450 Main Street, Room 328
Hartford, Connecticut  06103
(860) 947-1101
Federal Bar No. ct13437

_____   BROOKSLEY CRISMAN
LAW STUDENT INTERN
450 Main Street, Room 328
Hartford, Connecticut  06103
(860) 947-1101


OF COUNSEL:

ALEX M. AZAR II
General Counsel

NANCY S. NEMON
Chief Counsel, Region I

CLIFFORD M. PIERCE
Assistant Regional Counsel
U.S. Department of  Health and Human Services
J.F.K. Building, Room 2250
Boston, Massachusetts  02203
(617) 565-2379

                    CERTIFICATE OF SERVICE

     This is to certify that a copy of the foregoing memorandum
has been sent via facsimile on this 9th day of July 2004, to:

          Raymond J. Rigat
          Gilbride & Rigat
          23 East Main Street
          Clinton, Connecticut  06413

          Tanya Feliciano DeMattia
          Office of the Attorney General
          Health & Human Services
          55 Elm Street
          P.O. Box 120
          Hartford, Connecticut  06101


                              _____
                              CAROLYN A. IKARI
                              ASSISTANT U.S. ATTORNEY