UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHELA LEOCATA, THROUGH : | |
| MATTHEW T. GILBRIDE, ESQ., : | |
| CONSERVATOR OVER HER ESTATE : | |
| AND NEXT OF FRIEND : | CIVIL ACTION NO. 3:02CV1066 (CFD) |
|    *Plaintiff* : | |
| : | |
|         v. : | |
| : | |
| UNITED STATES DEPARTMENT OF : | |
| HEALTH AND HUMAN SERVICES, : | |
| TOMMY THOMPSON, SECRETARY : | |
| and PATRICIA WILSON-COKER, : | |
| COMMISSIONER DEPARTMENT : | |
| OF SOCIAL SERVICES : | |
|    *Defendants* : | July 28, 2004 |

### SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

The defendant, Patricia Wilson-Coker, Commissioner, Department of Social Services, files this Supplemental Memorandum in order to respond to plaintiff's citation to Townsend v. Quasim, 328 F.3d 511 (9th Cir. 2003) at oral argument on the preliminary injunction application. In Townsend, the Ninth Circuit construed the regulatory "integration mandate" and Olmstead v. L.C., 527 U.S. 581 (1999) as potentially requiring a state Medicaid agency to offer Medicaid Home and Community-Based Waiver Services for the Elderly to individuals who qualify for Medcaid as "medically needy" when the State would otherwise cover the cost of "long term care" for such individuals by covering nursing facility services. The Ninth Circuit purports to distinguish its holding from the decision of the Second Circuit in Rodriguez v. City of New York, 197 F.3d 611 (2nd Cir. 1999) based upon its finding that the only issue involved in Townsend and Olmstead was "where" services would be provided, not "whether" services would be provided. It did so by characterizing the applicable service at issue as being "long term care

services." The Court held that since the State covered "long term care" for the medically needy by covering nursing facility services, the "integration mandate" and <u>Olmstead</u> may also require it to provide coverage for "long term care" in community-based settings by extending the waiver program to the medically needy. It remanded the case back to the district court for further factual development on whether the "fundamental alteration" defense applied. Plaintiff's reliance on <u>Townsend</u> and the "integration mandate" is misplaced for a number of reasons.

I. **Plaintiffs' Preferred Residence is No More Integrated Than Alternatives that May be Covered Under the Medicaid Act.**

The regulatory "integration mandate" is based upon the policy determination that unnecessary institutionalization is a form of social isolation that constitutes illegal discrimination under Title II of the ADA. <u>Olmstead v. L.C.</u>, <u>supra</u>. The regulation provides that:

> A public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities.

28 C.F.R. Sec. 351.30(d).

The preamble to the regulations defines the "most integrated setting appropriate to the needs of qualified individuals with disabilities" as meaning "a setting that enables individuals with disabilities to interact with non-disabled persons to the fullest extent possible." 28 C.F.R. pt. 35, App. A.

Respectfully, there is no need to explore the outer reaches of the ADA in this case because the factual record to date affords no basis for a finding that plaintiff's preferred continued residence at Arden Courts is any "more integrated" than alternative nursing facility care. The evidentiary record indicates that Arden Courts serves a large number of Alzheimer and dementia residents through its assisted living services agency (ALSA). The "apartments" at the managed residential community ("MRC") were more accurately described as "rooms" facing off

2

of common areas at the preliminary injunction hearing. The licensed practical nurse from the facility further testified that the MRC is enclosed by "locked" fences which prevent residents from leaving without supervision. The ALSA at Arden Courts appears to offer appropriate care and services for the MRC residents; however, there is no factual basis for a finding that the environment offered by Arden Courts is any "less restrictive" or "more integrated" than the services provided by nursing facilities that participate in Connecticut's Medicaid program. The Conservator of Person's understandable desire not to "disrupt" plaintiff by relocating her to another residence where public funding may be available is insufficient to state an ADA claim in the absence of evidence that her present residence is "more integrated" because it offers greater contact with non-disabled persons. In the absence of any such evidence, the preliminary injunction application must be denied on the facts due to the absence of any likelihood of success on the merits, without any requirement to consider the more difficult issue of whether the ADA requires the State to alter the mix of services it covers under its Medicaid program.

**II.      Alternatively, Rodriquez Controls the Outcome of this Case**

Plaintiff's reliance on Townsend v. Quasim, supra, is further misplaced in that it purported to distinguish Rodriquez by indicating that Rodriquez only concerns "whether" services would be provided, but that "when the issue is the location of services, not whether services will be provided, Olmstead controls." Townsend, 328 F.3d at 517. Upon analysis, that purported distinction fails. Rodriquez requires this Court to deny plaintiff's application for preliminary injunctive relief due to the absence of any likelihood of success.

In Rodriquez, the New York Medicaid program covered "personal care services", an optional Medicaid service, but defined personal care services in a manner that excluded coverage of "safety monitoring services" as a personal care service that was covered by the state's

3

Medicaid program. A group of Medicaid recipients claimed that "they cannot remain in their homes without it", 197 F.3d at 614, and brought an action claiming, in part, that Title II of the ADA required the state to modify its state Medicaid program to include coverage of safety monitoring services in order to avoid their unnecessary institutionalization. The Second Circuit rejected the claim, reasoning that:

> *Olmstead* does not, therefore, stand for the proposition that states must provide disabled individuals with the opportunity to remain out of institutions. Instead, it holds only that "States must adhere to the ADA's nondiscrimination requirement with regard to the services they in fact provide."

Rodriquez, 197 F. 3d at 619

The holding of the Second Circuit in Rodriquez that the ADA does not require an agency to provide new or additional services for the disabled which are not also provided for other individuals in order to prevent "institutionalization" is fully supported by U.S. Supreme Court and Second Circuit case law. Alexander v. Choate, 469 U.S. 287, 105 S. Ct. 712 (1985) (Section 504 of the Rehabilitation Act does not require a state Medicaid program to suspend operation of a fourteen day annual amount, scope, and duration limitation on Medicaid coverage of hospital services, notwithstanding evidence that application of the limitation had a disparate impact on the disabled); Doe v. Pfrommer, 148 F. 3d 73, 83 (2nd Cir. 1998) (ADA requires only that a particular service that is provided to some not be denied to disabled persons); Wright v. Guiliani, 230 F. 3d 543 2nd Cir. 2000) (ADA does not require a state to provide additional substantive benefits.); Lincoln CERCPAC v. Health and Hospitals Corp., 147 F. 3d 165, 168 (2nd Cir 1998) (disability statutes do not guarantee any particular level of services).

The plaintiff in this action is similarly seeking an additional benefit that is not provided to other non-disabled individuals – payment for the cost of her assisted living services and room

4

and board at Arden Courts as a Medicaid benefit, when room and board outside of an institution is not covered at all by the Medicaid program, even through the state's assisted living pilot. This case is therefore directly controlled by Rodriquez. Rodriquez specifically holds that the ADA does not require a state Medicaid agency to cover new and additional services merely because she administers the Medicaid program and covers the cost of necessary nursing facility services as a covered benefit under such program.[1]

The issue in Townsend v. Quasim was the limitation in scope of individuals who could participate in the state's Home and Community-Based Waiver Program for Elderly Individuals. The state's waiver program only covered elderly individuals who qualified for Medicaid as "categorically needy" by having monthly incomes that were below prescribed Categorically Needy Income Limits. The Waiver Program excluded individuals who qualified for Medicaid as "medically needy" based upon "spending down" their higher incomes to prescribed Medically Needy Income limits. As a result, the "medically needy" could receive coverage for nursing facility costs, but could not obtain coverage for alternative community-based waiver services. The Ninth Circuit ruled that Title II of the ADA, as implemented by the integration regulation, requires the states to extend their waiver programs to the medically needy, unless the state can demonstrate that a "fundamental alteration" would occur as a result. Respectfully, Townsend cannot be reconciled with Olmstead or Rodriquez because the services provided to the "medically needy" did not include "waiver services," which is a distinction a state is permitted to

---

[1] Nursing facility services are a mandatory category of services which all states must cover. 42 U.S.C. §§ 1396d(a); 1396a(a)(10). Applying plaintiff's reasoning, the defendant would have no discretion as a result of the ADA as to whether to cover any "less restrictive" service as a Medicaid benefit solely by virtue of the fact that she complies with the requirements of federal law and covers nursing facility case as a covered service. The Medicaid Act, however, expressly provides that a number of other services, including Home and Community-Based Waiver services, may be provided entirely at state option.

5

make under the terms of the Medicaid Act. Skandalis v. Rowe. The "discrimination" on when waiver services were available was based on the degree of financial need and on how the individual qualified for Medicaid, not on the presence or absence of a disability.

Townsend held that no claim for a new or additional service was at issue by broadly characterizing the service at issue as "long term care" services. Since the State was covering one form of "long term care" service, i.e., nursing facility services, Townsend holds that the ADA requires it also cover alternative form of "long term care" services that were provided for the categorically needy under Washington's Medicaid Home and Community-Based Waiver program. Townsend, 388 F. 3d at 517.

Rodriquez, however, rejects the claim that the service at issue may be defined with such generality specifically. It specifically rejected a claim that all "comparable" services must be covered, and focused instead on the particular service at issue. 197 F.3d at 618. It specifically ruled that the request for coverage of "safety-monitoring services" as part of "personal care services" was a request for a new or additional benefit, notwithstanding that New York also covered nursing facility service. Id. This Court is bound by Rodriquez, Doe v. Pfrommer, and the other Second Circuit cases cited, supra. Those cases all look to the particular service at issue, and deny relief where what plaintiff "ultimately seeks to challenge is not illegal discrimination against the disabled, but the substance of services provided to him through ….[Medicaid]" Doe, 148 F. 3d at 84.

The Ninth Circuit's expansive definition of the service at issue as "long term care" services is clearly inconsistent with the terms of the federal Medicaid Act that the defendant Commissioner is charged with administering in Connecticut. Congress does not generically authorizes funding for "long term care services." Instead, Congress defines "nursing facility

6

services" as a service that is separate and distinct from a variety of other services that may be of assistance in maintaining elderly and disabled individuals in the community. Compare 42 U.S.C. § 1396r, 42 U.S.C. § 1396d(a)(4), 42 C.F.R. § 483.1, 42 C.F.R. 440.40 (nursing facility services) with 42 U.S.C. § 1396n(c), 42 C.F.R. § 440.1, and 42 C.F.R. § 441.350 (waiver services for the elderly).[2] Each service has its own set of requirements. Waivers, furthermore, require detailed applications to the federal Secretary and demonstrations that the waiver program will be cost-effective before it can be implemented. 42 U.S.C. § 1396n(c), 42 C.F.R. § 441.350. The state defendant, therefore, cannot implement any waiver program on her own without first obtaining federal approval of an amended waiver application. Furthermore, Congress expressly provides that some services need only be provided at State option, while other services including nursing facility services, are mandatory and must be covered by a state Medicaid program. 42 U.S.C. §§ 1396a(a)(10), 1396d(a), and 1396n(c). The foregoing Second Circuit authority correctly requires this court to focus on the <u>particular</u> service at issue. The ADA affords no basis for a court to hold that the ADA supersedes the operative terms of the Medicaid statute that specifically controls the Commissioner's activities, and require her to "provide" any and all services that could prevent "institutionalization".

      Moreover, the Ninth Circuit's decision in <u>Townsend</u> does violence to accepted rules of construction which require a court to reconcile, and to give full effect, to <u>all</u> applicable statutory provisions. <u>Traynor v. Turnage</u>, 485 U.S. 535, 547-48 (1988). The dissenting opinion in <u>Townsend</u> correctly recognizes that the majority's decision violates these principles because it unnecessarily and incorrectly construes the ADA in a manner that trumps the discretion that is expressly afforded to the states by the Medicaid Act. The effective holding of the panel in

---

[2] The other types of services that either may, or must, be covered by a state Medicaid program

7

Townsend that the ADA effectively trumps the discretion that is afforded to the state by the federal Medicaid statute is at odds with the holding of the Supreme Court in Alexander v. Choate, and with the holdings of the Second Circuit in Rodriquez, Doe, Wright and Lincoln.  In Alexander, the Supreme Court held that § 504 does not require a state Medicaid program to modify the maximum benefit was provided under Tennessee's Medicaid program (fourteen days of coverage for hospital care).  Similarly, in Rodriquez, Doe, Wright, and Lincoln, the Second Circuit held that the ADA does not require a state to provide any additional or different benefit other than what was already provided under the statutory programs at issue.

### III.  Alternatively, Even Townsend Does Not Support the Entry of Relief in this Case.

Finally, even if Townsend were correctly decided, and even if could be harmonized with the applicable Supreme Court and Second Circuit authority, it still does not support the entry of relief in this case.  Townsend was expressly limited by the fact that the state agency could modify its state plan/approved Waiver and prospectively cover the requested Home and Community-Based Services as a Medicaid Waiver benefit that qualifies for federal financial participation.  Townsend, 328 F. 3d at 518, fn. 1.  In this case, however, the state may not amend its approved state plan/waivers in a manner that will allow coverage of the services requested by plaintiff[3] as a Medicaid benefit that qualifies for federal financial participation for at least two reasons: 1) Medicaid Waiver programs may not cover room and board costs, which are part of

---

are similarly separately defined as distinct and separate services.
[3] It should be noted that the Defendant Commissioner has considered the possibility of this Court ordering that, upon a demonstration of eligibility, the Plaintiff be allowed to participate in the state's assisted living pilot so that at least her assisted living costs would be covered.  That, however, would also require an amendment to the existing waiver as the pilot program is limited as to the number of individuals who may participate and the program is presently "capped."  It should also be noted that this possible solution presents another issue in that Arden Courts does not participate in the pilot program, so either the Plaintiff would have to move to an MRC that

the relief requested by plaintiff in this case (see extensive discussion and citations in the defendant Commissioner's Opposition to the Preliminary Injunction and Motion to Dismiss Amended Complaint); and 2) Arden Courts is <u>not</u> a participating provider, when the Act expressly requires the Medicaid agency to make Medicaid payments <u>only to</u> providers who execute the required provider agreement agreeing to accept Medicaid payment as payment in full. 42 U.S.C. § 1396a(a)(27), 42 C.F.R. §§ 431.107, 447.15.

It is clearly established that state Medicaid programs are not required to provide services that do not qualify for federal financial participation. <u>Maher v. Rowe</u>, 432 U.S. 464, 97 S.Ct. 2376 (1977). Accordingly, the request in this case goes far beyond the scope of the <u>Townsend</u> decision by requesting coverage of services that <u>may not be covered</u> under the Medicaid program. The Commissioner of Social Services is only authorized to administer Connecticut's Medicaid program to the extent it conforms to the requirements of Title XIX of the Social Security Act. She is not authorized to cover services that do not qualify for federal financial participation. Conn. Gen. Stat. §§ 176-2 (7), 17b-260 (Commissioner authorized to participate in the Title XIX medical assistance program and "shall administer the same in accordance with the requirements provided therein."). It clearly would not be a "reasonable modification" and would constitute a "fundamental alteration" if the Commissioner were required to fund services that do not even qualify for participation in the Medicaid program under the terms of federal law.

**<u>CONCLUSION</u>**

For the foregoing reasons, the Plaintiff is not entitled to relief under the Ninth Circuit <u>Townsend</u> case.

---

does participate, or, in the alternative, Arden Courts would have to seek qualification, which again would involve an amendment to the waiver.

                    RICHARD BLUMENTHAL
                    ATTORNEY GENERAL

BY:   /s/_____
       Tanya Feliciano
       Assistant Attorney General
       Federal Bar No. ct14966
       55 Elm Street
       P.O. Box 120
       Hartford, CT  06141-0120
       Tel: (860) 808-5210
       Fax: (860) 808-5385

Case 3:02-cv-01066-CFD   Document 55   Filed 07/28/2004   Page 10 of 11

**CERTIFICATION**

I hereby certify that a copy of the foregoing Supplemental Memorandum In Opposition to Motion for Summary Judgment was mailed in accordance with Rule 5(b) of the Federal Rules of Civil Procedure on this 28th day of July, 2004, first class postage prepaid to:

Raymond J. Rigat, Esq.
Gilbride & Rigat
23 East Main Street
Clinton, CT 06413

Carolyn A. Ikari
Assistant U.S. Attorney
450 Main Street, Room 328
Hartford, CT 06103

Clifford M. Pierce
Assistant Regional Counsel
Department of Health and Human Resources
J.F.K. Building, Room 2250
Boston, MA 02203

/s/_____
 Tanya Feliciano
 Assistant Attorney General
 Federal Bar No. ct14966