UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHELA LEOCATA, through Matthew T. Gilbride, Esq., Conservator over her Estate and Next of Friend,<br><br>      Plaintiff,<br><br>      v.<br><br>PATRICIA WILSON-COKER, Commissioner, Connecticut Department of Social Services;<br><br>and<br><br>TOMMY G. THOMPSON, Secretary of the U.S. Department of Health and Human Services,<br><br>      Defendants. | CIV. NO. 3:02CV1066 (CFD)<br><br><br><br><br><br><br><br><br><br><br><br><br><br>August 6, 2004 |

**OBJECTION TO STATE DEFENDANT'S
MOTION TO DISMISS**

**INTRODUCTION**:

      The federal and state defendants have filed additional motions to dismiss the amended complaint in the above referenced matter asserting that the failure to provide funding for the plaintiffs care does not violate the Americans with Disabilities Act ("ADA"). In addition, the federal defendant asserts that the ADA does not apply to the federal government. The plaintiff objects to the motions to Dismiss the amended complaint filed by the defendants for all the reasons more fully detailed below.

**ORAL ARGUMENT IS REQUESTED**

**SUMMARY OF THE PLAINTIFF'S ARGUMENT**

The plaintiff respectfully disagrees with the federal and state defendants' conclusions. The nature of the plaintiff's claims can be encapsulated in the following argument. The disabled elderly who require institutional care, as a class, have been protected by the Medicaid program which funds residential placement only in skilled nursing facilities. This class of disabled elderly, however, is impermissibly underinclusive, because it omits those disabled elderly, who, while they require lock-down residential care, do not need to be "confined" to a traditional "nursing home".

As a result, this latter class of disabled elderly, because they need to be in a lock-down, residential facility, are forced, by the arbitrary and irrational implementation of the various Medicaid rules and regulations as outlined in both the federal defendant's (and state defendant's) Memoranda of Law, to be confined in skilled nursing facilities where they don't need to be, at a significantly added expense to the government. (*the state defendant includes in her memorandum of law an exhibit which estimates that for the year 2001-2002 the average cost to Medicaid, not even considering the Medicare cost component, for skilled nursing care in Connecticut is $57,140 per year, or about $4,761.67 per month; the average monthly expense at Arden Court has been $4,200.00 per month for this same time period, a net difference of over $561.67 per month!)

The federal and state defendants have both proffered that the legitimate state interest in not paying the plaintiff's care at Arden Court, thus requiring her to enter a skilled nursing facility, is the government's desire not to have to regulate assisted living facilities. That is, they do not desire to expend additional funds to manage and regulate assisted living facilities, in order to ensure that tax dollars are properly spent. The

reasons advanced by both defendants are specious.  First, the plaintiff is not asking the state or federal government to regulate assisted living facilities; second, if the state and federal government already regulate skilled nursing facilities, why can't it create regulations for assisted living facilities, which agree to accept government funding, in order to serve the otherwise legitimate government interest in seeing that precious funding resources are not profligately wasted as they will be in this case if the plaintiff is forced out of her current facility.

The state defendant has also asserted that Arden Court is a "housing" choice for the plaintiff, and would be so for any member of her class of disabled elderly who require lock-down institutionalization.  However, as the complaint sharply points out, the plaintiff suffers from sever dementia, in sum, she needs to be in a lock-down facility for medical reasons, not simply as a matter of housing.  The residential care she receives at Arden Court is actually "medical care", but less intensive or restrictive; fortunately the plaintiff's medical situation does not require the additional burdens of round the clock personal care, such as having a nurse or hospital orderly was and bathe her, or place her in restrictive medical devices.

The plaintiff asserts that she: (1)has a due process "property" interest in reasonable Medicaid assitance ; (2) has a Due Process liberty interest in not being warehoused in a nursing home which would unduly restrict her personal freedom and liberty; (3) has an equal protection right to have Arden Court funded by Medicaid as administered by the state defendant; and (4) has a right to reasonable accommodation and the provision of funding for Arden Courts pursuant to Title II of the Americans with Disabilities Act ("ADA").

**FACTUAL BACKGROUND**:

For the purposes of a 12(b)(6), motion, all well-pleaded allegations *__are presumed true__*, all doubts and inferences are resolved in the pleader's favor, and the pleading is viewed in the light most favorable to the pleader. *Albright v. Oliver*, 510 U.S. 266,___, 114 S.Ct. 807, 810, 127 L.Ed.2d 114 (1994); *Bernheim v. Litt*, 79 F.3d 318, 321 (2nd Cir. 1996)

In the present matter, the complaint asserts that the plaintiff is approximately 68 years old, suffers from dementia, but is otherwise physically healthy. It is unlikely that she will deteriorate within the next several years to a point where she will require skilled nursing care. She is in need of residential care in a lock-down facility, but does not need to be confined to the gloom-ridden halls of a skilled nursing care facility, more commonly known as a nursing home. The plaintiff's estate is currently able to pay the fees for her residential care, but given the cost of that care, her estate will become insolvent within two years.

As the complaint asserts, the plaintiff is thriving in the facility that she currently resides and has come to consider her placement as her home. Her dementia will likely suffer increased deterioration if she is forced to leave her home and familiar surroundings. The state and federal governments will be required to spend nearly double the fees to place her in the confines of a skilled nursing facility the moment her funds run out. The plaintiff is currently unable to plan for her eventual placement given the uncertainty of federal and state regulations concerning medicaid. The rules and regulations, followed and enforced by the federal defendant, do not require states participating in the Medicaid program to fund the kind of assisted living residence that

the plaintiff currently calls home.  These rules and regulations as applied to the plaintiff are arbitrary and capricious, and not related to a legitimate governmental interest.

**PROCEDURAL HISTORY:**

On September 19, 2003, the parties argued the motions to Dismiss filed by the defendants in response to the initial complaint.  The responses to those motions filed by the plaintiff are hereby incorporated in this Objection to the Motions to Dismiss the Amended Complaint.

Since argument on September 19, 2003, the Court has not yet decided the issues raised by the defendants in their earlier motions.  The plaintiff has subsequently filed a Request for Injunctive Relief, and was allowed to amend her complaint to include a claim asserting a violation of Title II of the ADA.  Oral argument was heard on the Reqrust for Injunctive Relief on July 19, 2004.

On July 16, 2004, the state defendant filed a Motion to Dismiss the amended complaint; on July 28, 2004 the federal defendant likewise filed a Motion to Dismiss the amended complaint.

**LEGAL ARGUMENT**:

**1.      Article III's Standing Requirement.**

"To have standing, a plaintiff must '[1] allege personal injury  [2] fairly traceable to the defendant's allegedly unlawful conduct and [3] likely to be redressed by the requested relief.' " *Fulani,* 35 F.3d at 51-52 (quoting *Allen,* 468 U.S. at 751, 104 S.Ct. 3315).  In the present case, the plaintiff will suffer irreparable harm if forced to leave the continuity of her care and familiar surroundings.  While her estate has money enough for nearly two years of continued care, her claims will need to be heard by the Court within a reasonable time

frame prior to her forced eviction from her assisted living facility in order to prevent irreparable harm. She currently has no ability to properly plan for her future needs as long as it remains unclear whether she can receive Medicaid benefits for purposes of Title XIX payment of her care at Arden Court. This serves as the requisite personal injury for purposes of standing.

The above injury is the direct result of the arbitrary application of rules and regulations followed and enforced by the federal and state defendants, (insofar as they are unconstitutional, but still being enforced), thus the injury is traceable to the conduct of both the federal and defendants. Finally, if the plaintiff must eventually leave her facility, it would be best to do so now, before her dementia deteriorates further; however, if she can prevail in her claims in this complaint, she can remain where she is, all to the benefit of her overall well-being. Thus, the plaintiff's situation is likely to be redressed by an order of the Court ordering the public defendant to fund her residential fees from the Medicaid program. There is a "case and controversy" within the meaning of Article III, the plaintiff has standing to bring this action.

As more fully argued in her memoranda of law in opposition to the motions to dismiss previously filed by each defendant, and already before the Court, the Plaintiff asserts that there is no rational relationship between refusing to fund her stay at Arden Courts and any legitimate governmental interest, therefore her rights to Due Process and Equal Protection are violated by the defendants' refusal to fund her stay at Arden Courts; also, the Plaintiff has a meritorious claim under Title II of the ADA.

**1. Due Process**

The touchstone for the Court's Due Process analysis is <u>Youngberg v. Romeo, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982)</u>. In <u>Youngberg,</u> the Court addressed the substantive rights of a mentally retarded individual who was confined involuntarily to a state mental institution. "Under <u>Youngberg,</u> the plaintiffs in this case possess substantive liberty interests that require the State to provide adequately safe conditions, reasonable freedom from bodily restraint, and 'minimally adequate or reasonable training to ensure safety and freedom from undue restraint." <u>Youngberg,</u> 457 U.S. at 319, 102 S.Ct. at 2460).</u> To determine whether those rights have been violated, the court must balance the plaintiffs' "liberty interests against the relevant state interests." <u>Youngberg, 457 U.S. at 321, 102 S.Ct. at 2461.</u>

The Plaintiff in the instant matter has a right to her liberty, and does not require the assistance of a skilled nursing facility at this time. To confine her to a skilled nursing facility when a less restrictive alternative, here, Arden Courts, is available, and markedly cheaper, is outbalanced by her "liberty interest" to remain free of the nursing home. The State may not confine patients to mental institutions who do not belong there simply because it is financially or politically expedient to do so, *see* <u>Thomas S. by Brooks v. Flaherty (Thomas S. III),</u> 699 F.Supp. 1178, 1196 (W.D.N.C. 1988); <u>Thomas S. by Brooks v. Flaherty (Thomas S. II),</u> 781 F.2d 367, 375 (W.D.N.C. 1986).

2. **Equal Protection**

The Plaintiff further asserts that the defendants' failure to fund her continued stay at Arden Courts violates her rights to Equal Protection. Since the oral argument on September 19, 2003, the Massachusetts Supreme Court held that the State could not deny

homosexuals the right to intermarry, **while engaging in rational relationship review** of the relevant Massachusetts statute. See Goodridge v. Department of Public Health, 440 Mass. 309, 344, 798 N.E.2d 941 (Mass. 2003)(as matter of first impression, limitation of protections, benefits and obligations of civil marriage to individuals of opposite sexes lacked rational basis and violated state constitutional equal protection principles).

As the Goodridge Court recognized not every asserted rational relationship is a "conceivable" one, and rationality review is not "toothless." Murphy v. Commissioner of the Dep't of Indus. Accs., 415 Mass. 218, 233, 612 N.E.2d 1149 (1993), citing Mathews v. Lucas, 427 U.S. 495, 510, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976). Statutes have failed rational basis review even in circumstances where no fundamental right or "suspect" classification is implicated. See, e.g., Murphy v. Commissioner of the Dep't of Indus. Accs., 415 Mass. 218, 226-227, 612 N.E.2d 1149 (1993) (fee imposed on retention of counsel in administrative proceedings); Secretary of the Commonwealth v. City Clerk of Lowell, 373 Mass. 178, 186, 366 N.E.2d 717 (1977) (selection of surname for nonmarital child); Aetna Cas. & Sur. Co. v. Commissioner of Ins., 358 Mass. 272, 280-281, 263 N.E.2d 698 (1970) (automobile insurance ratesetting); Coffee-Rich, Inc. v. Commissioner of Pub. Health, 348 Mass. 414, 422, 204 N.E.2d 281 (1965) (sale of wholesome product); Mansfield Beauty Academy, Inc. v. Board of Registration of Hairdressers, 326 Mass. 624, 627, 96 N.E.2d 145(1951) (right to charge for materials furnished to models by trade school); Opinion of the Justices, 322 Mass. 755, 760-761, 79 N.E.2d 883 (1948) (proposed statute concerning regulating cemeteries); Boston Elevated Ry. v. Commonwealth, 310 Mass. 528, 556-557, 39 N.E.2d 87 (1942) (legislation impairing

*contract right); Durgin v. Minot, 203 Mass. 26, 28, 89 N.E. 144 (1909) (statute authorizing certain board of health regulations). Id. Goodridge, footnote 20, at page 330.*

*The Plaintiff in the present matter asserts that the failure of the defendants to fund her stay at Arden Courts is likewise irrational, and violative of her right to Equal Protection.*

### 3.      Title II of the ADA

Furthermore, as the Plaintiff asserted at oral argument on the motions to dismiss, the facts of her case closely resemble those in Olmstead.  Olmstead held that the ADA requires a state to provide community-based treatment to mentally disabled persons "when the State's treatment officials have determined that community placement is appropriate, the transfer from institutional care to a less restrictive setting is not opposed by the affected individual, and the placement can be reasonably accommodated, taking into account the resources available to the State, and the needs of others with disabilities." 527 U.S. at 587, 119 S.Ct. 2176.   As a result, the defendants' failure to fund her care at Arden Courts violates Title II of the ADA, insofar as it represents a failure on the part of the government to make a reasonable accommodation for the Plaintiff.

In Martin v. Taft, 222 F.Supp.2d 940 9S.D.Ohio 2002) the plaintiffs were a  class of persons with mental retardation or developmental disabilities and subclass of Medicaid recipients brought action against governor of Ohio, Ohio Department of Mental Retardation and Developmental Disabilities (ODMR/DD) and its director, and Ohio Department of Human Services (ODHS) and its director alleging violations of civil rights under the Constitution, the Rehabilitation Act, the Americans with Disabilities Act

(ADA), and the Social Security Act. The Court in *Martin* concluded that the defendants were not immune from suit under the Eleventh Amendment, and that, for the most part, the plaintiffs stated viable claims under federal law. *Id.* at 946.

In *Martin*, the Court stated "the significance of *Olmstead* cannot be overstated. The outcome of this case may depend largely on *Olmstead* 's central holding that unnecessary institutionalization of persons with mental disabilities constitutes discrimination under the ADA, as well as the limitations the Court placed upon that basic concept." In footnote 16, the Court in *Martin* observed that "the title of one scholarly article vividly illustrates *Olmstead* 's importance. Mary C. Cerreto, Olmstead: The Brown v. Board of Education for Disability Rights Promises,LimitsandIssues,3Loy.J.Pub.Int.L.47(2001)("Cerreto")."I*d.*at965.

The ADA requires publicly-funded services for the disabled to be provided in the most integrated setting appropriate to their needs. The plaintiff is clearly disabled and is entitled to receive benefits and services from the defendants through Medicaid when her own financial resources are depleted. Those long term services can be provided either in a nursing home or the assisted living facility where she currently resides. The assisted living facility where she currently resides is more integrated than a nursing home setting. Providing her care at Arden Courts imposes no additional costs or excessive burdens on the defendants. The ADA therefore requires that the services be provided in the setting of Arden Courts.

This integration mandate claim does not seek any alteration of Connecticut's program for individuals in the plaintiff's circumstances. At oral argument on the Request for Injunctive Relief, the state defendant produced evidence that Connecticut now has a

pilot program offering qualified individuals an opportunity to receive services through assisted living facilities rather than nursing homes. The very existence of such pilot program demonstrates that the plaintiff is not seeking a radical alteration of the state Medicaid plan. The fact that the state defendant already has a pilot program shows only that it is possible to provide assisted living without additional cost or administrative burden to the State for disabled persons whose needs are similar if not identical to the plaintiffs. That possibility could be established without reference to Connecticut's pilot program, but is undeniable because of it.

In a case whose analysis is relevant here—a challenge to a decision to terminate Medicaid home care services which would result in placement of plaintiffs in nursing homes—a New York Supreme Court properly distinguished *Rodriguez v. City of New York*, 197 F.3d 611 (2nd Cir. 1999), (the court in *Rodriguez* found that the plaintiff class was demanding a separate service), and held that "[u]nless respondents can demonstrate that accommodating Medicaid recipients who otherwise qualify for 24-hour home care would result in a fundamental alteration in the medicaid program, respondents must provide services in 'the most integrated setting appropriate to the needs of' petitioners." *Sanon v. Wing*, 2000 N.Y. Misc. LEXIS 139 (Feb. 25, 2000), 19-20. There is no question that Medicaid in Connecticut provides the services that the plaintiff seeks. The question in *Olmstead*, is where the defendants must provide those services. Consequently, *Rodriguez* does not affect the outcome in this matter. See *Townsend v. Quasim*, 328 F.3d 511, 517 (9th Cir. 2003).

Under the ADA, the state's unjustified refusal to fund long term care services to the plaintiff at Arden Courts is discrimination. That refusal cannot be less discriminatory

11

because the State actually provides the same services to a similar group of individuals in the pilot program, and in nursing homes. The state is not compelled by the ADA to provide the plaintiff services for which she is not qualified. But the plaintiff is qualified for long term care services, and the ADA does require the State to provide the services to which she is entitled in the most integrated, less restrictive setting possible without a fundamental alteration of its Medicaid program. At the hearing on the Request for Injunctive relief it became obvious through witness testimony that Arden Courts is a much less restrictive, and more integrated setting for the plaintiff—it is a "home" like environment. The staff is better suited to meet the plaintiff's medical, emotional and social needs; and the environment is more friendly than a traditional nursing home. The plaintiff should not have to be transferred to a facility with oxygen tanks, and breathing tubes all too plainly visible. A bureaucratic or administrative change in the State defendant's current program is not a "fundamental alteration." The fact that the federal defendant allows the state defendant to violate the ADA by approving the state's administrative plan greatly strengthens the plaintiff's assertions that the federal defendant has violated the Equal Protection notion of the Due Process clause of the Fifth Amendment.

**CONCLUSION**:

    For all of the above stated reasons, the plaintiff respectfully requests the Court to deny the state and federal defendant's Motions to Dismiss.

                                            RESPECTFULLY SUBMITTED,
                                            MICHELA LEOCATA

                                            By:_____
                                            Raymond J. Rigat, Esq.

Her Attorney
Gilbride & Rigat
23 East Main Street
Clinton, Connecticut  06413
Tel.: (860) 669-3273
Fax: (860) 669-3495
R. J. R. Federal Bar No. ct13320

## C E R T I F I C A T I O N

This is to certify that a copy of the foregoing Objection to the State and Federal Defendants' Motion to Dismiss has been mailed, first-class, postage prepaid, on this 6th day of August 2004, to:

Carolyn A. Ikari
Assistant U.S. Attorney
450 Main Street, Room 328
Hartford, Connecticut  06103;

Tanya Feliciano
Office of the Attorney General
Health and Human Services
55 Elm Street
P.O. Box 120
Hartford, Connecticut  06106;

AND

Attorney Clifford M. Pierce
Assistant Regional Counsel
U.S. Department of Health and Human Services
J.F.K. Building, Room 2250
Boston, Massachusetts  02203

_____
Raymond J. Rigat, Esq.